UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 17 CR 239 |
| JESSICA ARONG O'BRIEN, | Judge Thomas M. Durkin |
| Defendant, | |
| and | |
| JUDGES' RETIREMENT SYSTEM AND STATE EMPLOYEES' RETIREMENT SYSTEM, | |
| Third Party Respondents. | |

**MEMORANDUM OPINION AND ORDER**

Jessica Arong O'Brien was convicted of mail and bank fraud and sentenced to serve a year and a day of incarceration and to pay restitution. The Court granted the government's motion for an order to turn over O'Brien's pension contributions for the outstanding restitution and stayed the order pending appeal. *See* R. 396; R. 397. O'Brien moves for reconsideration and clarification of those orders. R. 404; 412. For the following reasons, O'Brien's motions are denied.

**Relevant Background**

O'Brien was convicted of bank fraud and mail fraud affecting a financial institution based on her participation in a several-year-long mortgage fraud scheme. The Court denied her post-trial motions, R. 292, and sentenced O'Brien to a year and a day of incarceration and imposed an assessment of $200 and restitution of $660,000,

1

R. 325 at 8. O'Brien and her co-defendant Maria Bartko are jointly and severally liable for the restitution. *Id.* The Court ordered O'Brien to pay restitution after her release from prison and set a monthly payment schedule of at least 10% of her monthly income. *Id.* at 6.

On appeal, the Seventh Circuit affirmed her convictions, and the United States Supreme Court denied her petition for a writ of certiorari. *See United States v. O'Brien*, 141 S. Ct. 1128 (2021); *United States v. O'Brien*, 953 F.3d 449, 453 (7th Cir. 2020). O'Brien then filed a petition for relief under 28 U.S.C. § 2255, which the Court denied. *O'Brien v. United States*, No. 22 C 00083, 2023 WL 2572542 (N.D. Ill. Mar. 20, 2023). The Court recently denied her Rule 59(e) motion to alter or amend the judgment denying her § 2255 petition. *O'Brien v. United States*, No. 22 C 00083, 2023 WL 8451801 (N.D. Ill. Dec. 6, 2023).

Following O'Brien's release from prison, the government sought a turnover order for her pension contributions. R. 371. On May 25, 2023, the Court granted the government's motion, R. 396, and on May 31, 2023, the Court entered an order directing the turnover, staying the order pending appeal, and prohibiting O'Brien from making any changes to her pension accounts, R. 397. At that time, O'Brien had an outstanding restitution balance of $657,385. *See id.* ¶ 1. Following the Court's ruling, O'Brien filed the instant motions to reconsider and clarify the Court's May 25th and 31st orders. R. 404; R. 412. Specifically, she asks the Court to vacate both orders, grant her an evidentiary hearing or oral argument and additional time to

2

propound discovery, and stay the turnover order until the resolution of her anticipated appeal of her 28 U.S.C. § 2255 motion.

## Legal Standard

Under Federal Rule of Civil Procedure 59(e), a party may move to alter or amend a judgment. Fed. R. Civ. P. 59. To obtain relief, the moving party must either (1) clearly establish a manifest error of law or fact or (2) present newly discovered evidence.[1] *Sigsworth v. City of Aurora*, 487 F.3d 506, 511–12 (7th Cir. 2007). To establish manifest error, the party cannot merely rehash old arguments; rather, manifest error requires a showing of "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citations omitted). Regarding new evidence, the party cannot introduce evidence that could and should have been presented prior to the judgment. *Sigsworth*, 487 F.3d at 512. The party must show that evidence was discovered post-judgment, that the evidence is material and not merely cumulative or impeaching, and that the evidence is such that it would probably produce a new result. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 955 (7th Cir. 2013).

---

[1] O'Brien asserts that courts may also grant relief under Rule 59(e) based on a showing of "manifest injustice" or an "intervening change in controlling law." R. 405 at 3; 411 at 2. This does not comport with Seventh Circuit precedent, which clearly establishes that Rule 59(e) allows two avenues for relief: manifest error or newly discovered evidence. *See, e.g.*, *Sigsworth*, 487 F.3d at 511–12; *LB Credit Corp. v. Resol. Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). O'Brien does not argue for relief based on an intervening change in controlling law, but she does seek relief based on manifest injustice. To the extent O'Brien seeks relief based on manifest injustice, the Court reviews her argument under the Seventh Circuit standard for manifest error of law or fact.

3

**Discussion**

I.   Turnover Orders

O'Brien raises a handful of challenges to the Court's turnover orders. To begin, she claims the Court erred in stating that "the Court made the full amount of restitution due upon O'Brien's release from prison and set a *minimum* monthly payment for any outstanding balance." R. 396 at 5 (emphasis in original). She argues that statement runs counter to the restitution order and *United States v. Sawyer*, 521 F.3d 792 (7th Cir. 2008).

For one, this statement accurately reflects the restitution order. As the Court explained, the order provided that the lump sum payment of $660,200, i.e., the entire penalty, was "due upon release from prison," and payment of any remaining balance was to begin within 30 days of O'Brien's release. R. 396 at 3–4 (quoting R. 325 at 8). And the schedule set forth by the Court, by its terms, established a minimum monthly payment, not a maximum. *Id.* (quoting R. 325 at 6). O'Brien's misinterpretation does not equate to error by the Court.

Additionally, this statement does not run afoul of *Sawyer*. According to O'Brien, *Sawyer* stands for the proposition that a restitution order providing that payment is "immediately due" after release is erroneous if the defendant lacks the wealth to pay at once. That's not quite right. *Sawyer* explained how 18 U.S.C. § 3664(f)(1) "requires the judge to *set a schedule* if a defendant cannot pay in full at once," and that the schedule must begin after release from prison. 521 F.3d at 796 (emphasis added). The Seventh Circuit went on to recognize that a judgment

4

requiring immediate payment after release (i.e., not setting a payment schedule), though erroneous, did not "jeopardize substantial rights," such that it was not plain error and did not warrant vacatur. *Id.* at 798. But here, unlike in *Sawyer*, the Court set a minimum payment schedule. That minimum payment schedule does not change the fact that O'Brien owes the full stated amount of restitution. *Id.* at 796. Nor does it abrogate the government's ability to collect the balance of restitution by other means. *See* 18 U.S.C. § 3664(m)(1)(A).

O'Brien also claims that the Court erred by not addressing her argument that granting turnover violates the Mandatory Victims Restitution Act ("MVRA") provisions limiting the time for restitution order modifications and effectively expands the government's collection authority. Here too, O'Brien apparently ignores the thorough legal analysis supplied by this Court as to why the government's motion for a turnover order was not a modification of the restitution order. R. 396 at 2–5. The Court declines to repeat that analysis here. The bottom line is that because there is no modification, the MVRA's provisions related to modifications are inapplicable. Relatedly, O'Brien appears to argue that the Court erred in relying on cases where a criminal defendant entered into a plea agreement. But with each citation, the Court explained why the fact that those cases involved plea agreements did not make those cases any less instructive on the issue being discussed. *See id.* at 5 n.2, 7 n.4. The Court's reliance on relevant authority is not a manifest error of law.

O'Brien further suggests that this Court granted the government's motion as a matter of course. She emphasizes that the fact that the government regularly seeks

5

turnover orders does not minimize this Court's ability to limit the government's enforcement of restitution. *See* 28 U.S.C. § 3013; *United States v. Hosking*, 567 F.3d 329 (7th Cir. 2009), abrogated on other grounds by *Lagos v. United States*, 138 S. Ct. 1684 (2018) (citing 18 U.S.C. § 3664(f)). That is true. The problem is that O'Brien misreads the Court's reference to "routine" practice. In considering O'Brien argument that ordering turnover violated her right to be heard on a "special condition of supervised release" *at sentencing*, the Court explained that "courts routinely order turnover of funds to satisfy restitution *after* sentencing." R. 396 at 8 (emphasis in original). The focus was on the timing of the government's request. The Court did not grant the government's motion automatically, but rather upon careful consideration.

The remainder of O'Brien's arguments do not challenge this Court's reasoning granting the turnover orders. Rather, she claims that the underlying restitution judgment is invalid because the government did not properly identify the actual victims; the identified victims did not experience actual losses; and the victim banks were reckless before the 2008 mortgage crisis and should not be considered victims. She also criticizes the government's decision not to charge Christopher Kwan, the straw buyer who was fraudulently qualified for mortgage loans and purchased O'Brien's properties.

A Rule 59(e) motion to alter or amend turnover orders is not the proper vehicle to challenge the validity of restitution. A district court's authority to revisit a criminal sentence is limited and must derive from a statute or rule. *See United States v. Goode*, 342 F.3d 741, 743 (7th Cir. 2003). Section 3664(o) provides that restitution is a final

6

judgment that may only be modified on direct appeal and other select circumstances. 18 U.S.C. § 3664(o). O'Brien appealed her sentence more than four years ago. At that time (and several times before), she raised her arguments regarding the financial institution element, which the Seventh Circuit rejected. She did not contest the loss amounts or argue the victim banks had unclean hands. "[T]he time to raise these sorts of arguments was at sentencing and on direct appeal from the judgment." *See United States v. Simon*, 952 F.3d 848, 852 (7th Cir. 2020) (failure to make arguments about validity of the restitution obligations at sentencing or appeal amounted to waiver).

O'Brien claims that she did not discover that a third party, the CMALT 2007-A5 trust, funded Kwan's loans, until after she was released from prison.[2] She also reiterates her accusation of perjury by a government's witness at trial. The Court extensively discussed this issue in denying O'Brien's § 2255 petition. *See O'Brien*, 2023 WL 2572542, at *6 n.9, 14–16. Two points are relevant here: (1) the CMALT 2007-A5 trust document O'Brien claims is new evidence was publicly available at the time of O'Brien's sentencing; and (2) the evidence shows that the CMALT 2007-A5 trust had nothing to do with the loans at issue. In other words, the CMALT 2007-A5 trust evidence could have been presented before sentencing, is not material, and would not produce a new result. *See Cincinnati Life Ins.*, 722 F.3d at 955. So even if

---

[2] In contrast, O'Brien does not claim that her unclean hands argument was unavailable to her at sentencing or on appeal. As such, the Court does not reach the merits of the argument that restitution is invalid because victims have unclean hands, including whether *United States v. Litos*, 847 F.3d 906 (7th Cir. 2017) applies.

7

the Court were to consider the validity of the restitution judgment at this juncture, it would not warrant Rule 59(e) relief.

Additionally, while O'Brien mentions Section 3664(o)'s other paths for modification, she does not explain how they would cover her validity arguments. *See* Fed. R. Crim. P. 35 (allowing corrections for technical errors within 14 days); 18 U.S.C. § 3664(k) (allowing modification based on a change in defendant's financial circumstances); 18 U.S.C. § 3572 (allowing adjustment of fines); 18 U.S.C. § 3613A (allowing resentencing upon finding defendant defaulted on restitution).

As to the fact that Kwan was not criminally prosecuted, it is entirely unclear how the government's charging decisions are related to the Court's orders granting turnover of O'Brien's pension contributions. And, in any case, the Court does not have any say in who the government charges. *See In re United States*, 345 F.3d 450, 451–52 (7th Cir. 2003). The fact that the government chose not to charge Kwan is not a manifest error by the Court.

Moreover, O'Brien accuses the government of not crediting her co-defendant's restitution payments to O'Brien's restitution judgment. As a preliminary matter, it is the Clerk of the Court who receives, credits, and disburses restitution funds, not the government. However, the government can review the Clerk's accounting and represents that upon its review, the Clerk has correctly applied approximately $6,000 from O'Brien's co-defendant's payments to the restitution judgment, and the outstanding balance remains over $650,000. R. 418 at 7. As such, O'Brien is receiving proper credit, and the Court did not err in granting turnover. To the extent that

8

O'Brien would like an accounting to review this information herself, she may request one from the Clerk's Office.

Lastly, O'Brien appears to make several new arguments in reply. As this Court has previously explained, arguments raised for the first time in reply are waived, and the Court will not address them. *See O'Brien*, 2023 WL 2572542, at *4 (citing *Porco v. Trustees of Ind. Univ.*, 453 F.3d 390, 395 (7th Cir. 2006) (even when litigant is pro se, arguments made for the first time in reply brief are waived)).

II. Evidentiary Hearing or Oral Argument and Discovery

O'Brien argues that the Court erred in concluding that there were no factual or legal disputes that warrant an evidentiary hearing or oral argument. Yet she fails to identify a factual dispute that bears on the issue of turnover or a legal issue that requires oral argument notwithstanding the voluminous briefing on the motion for turnover. The only purported disputes she identifies are those related to loss, including the CMALT 2007-A5 trust issue. But as previously explained, those arguments are not relevant to the question of whether the government is entitled to a turnover order.

In reply, O'Brien faults the Court for not holding a hearing on the financial hardship she will sustain if she must turn over her pension contributions. As before, because this argument was raised for the first time in reply, it is waived. *Porco*, 453 F.3d at 395. Even if it wasn't, the potential financial impact to O'Brien of having to turn over her pension contributions does not change the fact that she presently owes (jointly and severally with her co-defendant) over $650,000 in restitution, and the

9

government can enforce that restitution through its lien on her property and rights to property. Indeed, before imposing that restitution judgment at sentencing, the Court carefully considered her ability to pay. *See* R. 291 at ¶¶ 74–82 (pre-sentence investigation report detailing O'Brien's income, assets, expenses, cash flow, and employment prospects). And while the Court has discretion to limit the government's enforcement of restitution, declining to exercise that discretion is not manifest error.

III. Stay Pending Appeal of § 2255 Petition

O'Brien claims that the Court erred by not staying the turnover of her pension contributions pending the appeal of her § 2255 petition. As of O'Brien's response to the government's motion for turnover, she had not yet filed her § 2255 petition. As of this Court's ruling on turnover, it had already denied her § 2255 petition. And as of today, she has not appealed that denial. In fact, the Court declined to issue a certificate of appealability for its denial of her § 2255 petition. *O'Brien*, 2023 WL 2572542, at *20. For those reasons, not staying the turnover pending an appeal of the Court's ruling on her § 2255 petition was not a manifest error. Nor is there a basis to extend a stay to a not-yet-filed appeal. If—following the disposition of her appeal of the turnover orders—there is a pending appeal of her § 2255 petition, O'Brien may request a stay at that time.

## Conclusion

For the foregoing reasons, the Court denies O'Brien's motions for reconsideration and clarification of the turnover orders.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: January 23, 2024

11